ANNIE L. RICHARD ET AL. vs. MICHAEL P. SHEA.

Second Judicial District, Norwich, April Term, 1919.
PRENTICE, C. J., RORABACK, WHEELER, BEACH and GAGER, Js.

A lessee who waives compliance with a promise of his lessor, the original
tenant, to secure the written permission of the owner of the prop-
erty to the subletting, will not be allowed to defend in an action for
rent subsequently accrued, upon the ground that such noncompli-
ance constituted a breach of the terms of the sublease to him; es-
pecially if the owner, as in the present case, asserts no right ad-
verse to the occupancy of the sublessee.

Waiver and estoppel are often closely related; for the situation created
by the waiver naturally tends to influence the conduct of the other
contracting party accordingly, and where this influence is effective,
all the elements of estoppel are present.

The evidence in the present case reviewed and held to have warranted
the jury in finding that the defendant had waived compliance with
the provision in his lease that the subletting should have the writ-
ten consent of the owner of the premises.

Argued April 29th—decided June 11th, 1919.

ACTION to recover rent, brought to the Court of Com-
mon Pleas in New London County and tried to the jury
before *Waller, J.;* verdict and judgment for the plaintiffs
for $500, and appeal by the defendant. *No error.*

Evidence, for the most part undisputed, was offered
by the plaintiffs to establish the following facts:—

April 15th, 1912, James P. Shea was the owner of a
building on Bank Street in New London, a part of
which was occupied and used in the conduct of a liquor
saloon. By an indenture of lease of that date between
him and the plaintiff Albert J. Richard, he leased the
saloon premises to the plaintiff for the term of five
years from April 1st, 1912, at a monthly rent of $106.25.
In the lease Richard agreed that he would neither assign
it nor underlet a part or the whole of the leased premises
without Shea's permission.

Richard and his wife went into possession under the lease and continued to conduct there a liquor saloon until January 17th, 1916. On that date they entered into a written agreement for the sale to the defendant of the lease of the premises, the business carried on there, the license therefor, and the stock of goods and fixtures in the saloon. This agreement contained, by reference to another document, the undertaking on the part of Richard that he secure the written consent of the landlord to the subletting, as well as the following stipulation: "It is further understood that if the said Michael P. Shea vacates the premises under lease before the expiration of the lease period that he, the said Michael P. Shea, shall have the right to place therein a tenant for the remaining unexpired portion of the time, who may engage in the same or different kind of business. If said tenant engages in a different kind of business, the said Albert J. Richard will secure in addition to his own written consent, the consent of the landlord in writing, agreeing to sublet to the tenant for the remaining period of time."

The agreed consideration for this sale was $2,500. In addition the defendant undertook to pay to the Richards a monthly rent of $125 during the unexpired period of their lease.

Pending the negotiations which resulted in the execution of this sublease, the defendant sought an interview with James P. Shea for the purpose of ascertaining if the latter was willing to consent to the assignment of the lease. At that interview he told James P. Shea that he had made an agreement with Richard for the purchase of the business, and asked about the clause in the lease requiring the landlord's consent. James P. Shea thereupon replied that whatever the defendant and Richard had agreed to would be entirely satisfactory to him.

Michael, immediately upon the execution of the contract with the Richards, paid them the $2,500 purchase price, entered into possession of the premises and the personal property included in the sale, secured the transfer to himself of the license, employed Richard to manage the business, and proceeded to conduct the saloon as his own for a period of four months, using the stock and fixtures in so doing. During this time he regularly paid to the Richards the stipulated monthly rent of $125. At the end of that time he hired for a much lower rent another saloon which he regarded as being more favorably located, moved his business thereto and abandoned the Richards' premises.

James P. Shea was aware of the facts connected with the subletting of the premises and their occupancy by the defendant, as above recited, and orally consented thereto. His written consent, however, was never asked or obtained. The defendant never requested the Richards to obtain such consent, or indicated in any way at any time during his occupancy that he desired that such consent be secured, or that he was not satisfied with the existing situation. Therefore the plaintiff took no steps to secure it.

*Thomas M. Shields*, for the appellant (defendant).

*C. Hadlai Hull*, for the appellees (plaintiffs).

PRENTICE, C. J. The plaintiffs sue to recover rent claimed to have accrued and to be unpaid, reserved in a sublease made by them to the defendant. The sole defense to the action pursued below was, that by the plaintiffs' failure to obtain from the owner of the property and original lessor his written consent to the subletting, as they had agreed to do in their lease to him, they had, prior to the time for which recovery was

sought, broken the lease and thereby released the defendant from further obligation thereunder.

The appeal, in so far as it relates to the charge of the court as made, concerns questions of waiver and incidentally of estoppel. Some of the passages complained of deal with a claimed waiver on the part of James P. Shea, the owner of the property and original lessor, of the stipulation in an indenture of lease between him and the plaintiff Albert J. Richard to the effect that Richard, the lessee, would not assign the lease or underlet a part or the whole of the premises without written permission from the lessor. Other portions relate to a claimed waiver on the part of the defendant of a provision embodied in the sublease to him, whereby the plaintiffs undertook to secure from their landlord a written consent to the subletting. The court in its charge covered both of these subjects, and instructed the jury that to entitle the plaintiffs to a verdict they must be satisfied that both waivers had been established by a preponderance of evidence. As the jury returned a verdict for the plaintiffs it necessarily follows that they found in favor of both waivers.

The burden imposed upon the plaintiffs by the charge was greater than they were called upon to bear. If the defendant waived compliance on the part of the Richards with their agreement that they secure written permission for their subletting to him, he will not be permitted to assert that noncompliance with it constituted a breach of the terms of their lease to him. It matters not what James P. Shea's attitude or legal rights may have been. It is not pretended that he asserted any rights adverse to the defendant's occupancy. The latter left the premises and refused to pay further rent to the Richards, for no other reason than the purely technical one that they had not obtained the written consent they had undertaken to get. If, by his

words or conduct, he waived compliance with that stipulation, he cannot now be suffered to base a default upon noncompliance. If, as the result of that waiver, the plaintiffs were influenced, as was natural, to take no steps to procure the written consent, all the elements of an estoppel are present, and such estoppel is an effective bar to his defense. Bernhard v. Rochester German Ins. Co., 79 Conn. 388, 393, 65 Atl. 134. Such being the case, those portions of the charge which concern a waiver by James P. Shea of his rights, and they include all but one of the passages complained of, possess no present importance.

In the remaining passage, which alone bears upon the matter of waiver by the defendant, we are unable to discover anything erroneous. In fact it is harmful to the plaintiffs rather than otherwise, since it makes their recovery contingent upon a finding of a waiver on the part of both James P. Shea and Michael.

The two complaints made, of failure to charge as requested, are not well founded. One relates to a contingency which has never happened, and creates out of a failure to obtain a written consent, which the lease to the defendant did not require the plaintiffs to secure until the contingency arose, a present breach of the terms of the lease. The other is a statement of principle so broad that counsel for the defendant does not undertake to justify it.

The defendant's motion to set aside the verdict was properly denied. The plaintiffs offered evidence to establish that, notwithstanding the condition in the sublease requiring the plaintiffs to obtain the landlord's written consent to it, the defendant, having the landlord's oral consent that he become the lessee of the Richards, paid to them the agreed purchase price for the lease, business, license, fixtures and stock, went into occupation of the premises and personal prop-

erty therein, applied for and received the transfer to himself of the license, conducted the business for four months, using the stock of liquors on hand and employing Richards in so conducting it, and paid to the Richards the agreed monthly rent as it accrued, and that during this whole period he made no request for the written consent, or reference to it whatsoever, and indicated in no way that he was not fully satisfied with the situation and the Richards' performance of the contract. A finding by the jury that the defendant had by his conduct waived compliance with the provision in question was, upon this evidence, not unreasonable.

There is no error.

In this opinion the other judges concurred.