The appeal is dismissed and the award is sustained.

## NEW YORK CASUALTY COMPANY v. THE CITY CONSTRUCTION COMPANY ET AL.

SUPERIOR COURT          FAIRFIELD COUNTY          FILE No. 71857

Memorandum filed January 18, 1950.

*Pullman & Comley,* of Bridgeport, for the Plaintiff.

*Saltman, Weiss & Connors,* of Bridgeport, for the Defendants.

ALCORN, J.   The plaintiff has sued three individuals, a partnership, and a corporation for reimbursement of moneys which it was required to pay as surety on a bond. The basis of the action against two of the individuals, the partnership and the corporation is their agreement to indemnify the plaintiff against loss by reason of the suretyship. These defendants defaulted and judgment has previously been rendered against them for $95,635.78.

The third individual, Sam Tangredi, is a defendant under allegations of the complaint, in substance, that he is the record owner of a piece of real estate which in actuality belongs to his father, Nicola Tangredi, one of the individuals against whom judgment has been rendered; and the relief sought is a decree ordering a conveyance of this property to the claimed real owner in order that it may be made subject to levy and execution to satisfy the judgment already rendered against him. *Davenport* v. *Lacon,* 17 Conn. 278; *Smith* v. *Gilbert,* 71 Conn. 149; *Greenwich Trust Co.* v. *Tyson,* 129 Conn. 211, 219.

The defendant Sam Tangredi has appeared, filed an answer denying the plaintiff's claims as to him, and the issue thus closed is the only one tried and encompassed by this decision.

The facts established by the evidence upon this issue are as follows: Sam Tangredi is the only son of Nicola Tangredi and Margaret Tangredi. On January 6, 1942, Nicola and Margaret Tangredi bought a building lot for $650. Prior to that date Nicola, with the assistance of Sam, had begun the construction of a five-room house on the lot. On February 10, 1942, Nicola and Margaret executed and delivered to Sam a quitclaim deed of the lot with the building thereon. Sam was then a minor nineteen years old, unmarried, and had been working since 1939 and turning his earnings over to his parents. His parents decided on the conveyance to him because of his help in the construction of the house and as an inducement to keep him at home with them. Nicola Tangredi had no indebtedness at the time, there was no agreement or understanding between Sam and his parents that he was to hold the title for them or reconvey it to them, and he gave them no deed or other evidence of any interest by them in the property. The house was finished and the family moved in prior to Easter, 1942. The entire cost of lot and house was about $5500 and all the labor involved in building was done by Sam and Nicola except for the hiring of a plumber, electrician, and heating contractor.

Sam and his parents lived in the house until he entered military service in 1943. He remained in the service about three years and during his absence his father applied for, as owner, a permit to add a porch to the house. After coming out of the service Sam lived at the house, married, brought his wife there to live, and finally, about two years ago, moved to a new house he had built. On August 10, 1949, and since this action was brought, Sam has executed and delivered a quitclaim deed of

the property in issue to his mother reciting a consideration of less than $100. ' His parents still occupy the property as their home.

The plaintiff claims that the property belongs to Nicola Tangredi because the transaction gave rise to a resulting trust. It points in particular to his statement in the building permit, and in a financial statement, hereinafter referred to indicating that he always claimed to be the real owner.

The indemnity agreement upon which the plaintiff's judgment is based was not signed by Nicola Tangredi until May 10, 1944, more than two years after the deed from Nicola and Margaret Tangredi to Sam. As a preliminary to the plaintiff's issuance of its surety bond contemporaneously with this agreement, Nicola gave it, on April 22, 1944, a financial statement reciting that one of his assets was "Home at 130 Soundview Ave. in name of Sam Tangredi my son—deed from him to me unrecorded." If the plaintiff seriously considered this representation important to its undertaking liability on the surety bond, an issue not material to the present case, it would have been a simple matter and a businesslike procedure to have insisted upon seeing the unrecorded deed, if it existed, before entering into the bond. The plaintiff did not do so, however, and, as already indicated, the evidence does not establish that such a deed did exist.

A resulting trust such as is claimed to exist here arises, if at all, by implication of law from the presumption that a purchase will inure to the benefit of the one who furnishes the purchase price. Dean v. Dean, 6 Conn. 285; Ward v. Ward, 59 Conn. 188, 195; Dickinson v. Dickinson, 131 Conn. 392, 395.

There is an exception to this general rule in a situation where the conveyance is to a wife or minor child for whom the purchaser is under a natural, moral or legal obligation to provide. In such a case the transaction is regarded prima facie as a settlement upon the grantee. Ward v. Ward, supra, 196. It is unnecessary to discuss this presumption as it applied to Margaret Tangredi's interest in the original lot and the improvements subsequently made on it. The claim is not made in the present case, and the evidence does not warrant the conclusion that Sam Tangredi had been emancipated at the time of this conveyance or that he was not entitled, as a minor, to his parents' support. Consequently the presumption of a resulting trust does not arise from the transaction disclosed.

The trust would arise, if at all, immediately upon the conveyance from the parents to the son. *Ward* v. *Ward,* supra, 195. Subsequent acts or declarations of Nicola Tangredi would therefore not be significant to create any resulting trust but would have relevancy only to indicate what the intent of the parties may have been at the time of the conveyance as supporting or refuting any implication which the law gave to the transaction. There is nothing in the facts of this case to indicate that at the time of the conveyance any meaning should be given it other than that which the law attaches to it. At that time Nicola Tangredi was not indebted to this plaintiff or any other creditor and there is no basis for concluding that the transaction was intended to be in fraud of future creditors. *Gest* v. *Gest,* 117 Conn. 289; *Allen* v. *Lyness,* 81 Conn. 626.

The evidence offered, instead of rebutting the presumption of a settlement, is convincing that Nicola and Margaret Tangredi in fact intended to make a gift of this property to their son. *Reynolds* v. *Reynolds,* 121 Conn. 153, 156.

Enter judgment for the defendant Sam Tangredi.